UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------------X

JAMES J. McCLARIN III,

                Plaintiff,

    - against -

UNITED STATES OF AMERICA,

                Defendant.
-------------------------------------------------------------X

Civil Action No.: _____

**COMPLAINT**

1. Plaintiff, JAMES J. McCLARIN III (hereinafter referred to as the "Plaintiff"), pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, seeks compensatory damages arising from Defendant United States of America's (hereinafter "Defendant") negligence in the failing to adhere to the prevailing professional standard of care which is generally recognized as acceptable and appropriate by reasonably prudent similar health care providers.

**I.**    **JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law. This Court further has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) in that this is a claim against the Defendant United States of America, for money damages, accruing on or after January 1, 1945, for personal injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff.

3. Jurisdiction founded upon the federal law is proper in that this action is premised

upon federal causes of action under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671, et. seq.

4. Pursuant to the FTCA, 28 U.S.C. §§ 2671 and 2675(a), the Plaintiff, on or about June 19, 2019, presented his claim, Standard Form 95, to the appropriate federal agency for administrative settlement under the FTCA requesting a sum certain in money damages, in accordance to 28 C.F.R. § 14.2(a), in the amount of $13,054,972 for personal injury. The written notice of claim demanding a sum certain was signed by Plaintiff pursuant to 28 C.F.R. § 14.2(a). By letter, dated August 14, 2019, the Office of General Counsel for the U.S. Department of Veteran Affairs acknowledged receipt of Plaintiff's tort claim on June 24, 2019. By letter dated, June 16, 2020, Plaintiff's claim was finally denied in writing by the Office of General Counsel for the U.S. Department of Veterans Affairs, and such denial was sent by certified mail to the Plaintiff. (Claim # GCL 431616). This lawsuit was then timely filed.

5. This action is timely pursuant to 28 U.S.C. § 2401(b) in that it was presented to the appropriate federal agency within two years of accrual, and this action was filed within six months of receipt of the certified letter sent by the federal agency denying the claim.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as the Defendant does business in this district, and Plaintiff resides, and has continued to receive medical care from the Defendant, in this judicial district.

## II. PARTIES

7. This is a medical malpractice action involving severe personal injuries and brain damage suffered and incurred by the then 33-year-old Navy Veteran Plaintiff. This matter involves a claim of the failure to timely and properly evaluate and support the nutritional needs of the Plaintiff, who had duplicating esophageal cyst that was causing intractable nausea, vomiting and

weight loss of approximately 140 lbs. over a four (4) month period, and that this failure resulted in malnutrition and a thiamine (vitamin B1) deficiency causing Plaintiff to develop Wernicke-Korsakoff Syndrome. Wernicke-Korsakoff Syndrome is a brain disorder due to vitamin B1 (thiamine) deficiency. Wernicke's encephalopathy and Korsakoff's psychosis are the acute and chronic phases of the syndrome. Plaintiff has sustained permanent neurological injuries to the brain from the Wernicke-Korsakoff Syndrome due to the negligence and medical malpractice of the Defendant.

8. The subject care and treatment, which began on July 1, 2017 and continued, during a continuous course of treatment, through July 20, 2017, occurred at the Robert J. Dole VA Medical Center, 5500 E. Kellogg Ave., Wichita, Kansas 67218 (hereinafter "Robert J. Dole VAMC"), an agency owned and operated by the Defendant.

9. The Plaintiff resides at 13 Meadowbrook Lane, Brookhaven, Pennsylvania 19015, within the jurisdiction of the United States District Court for the Easter District of Pennsylvania.

10. At all times hereinafter mentioned, Plaintiff was a citizen of the United States of America, and resided at both 9100 E. Harry Street, Apt. 112, Wichita, Kansas, when he was receiving the medical care at issue, then thereafter at 13 Meadowbrook Lane, Brookhaven, Pennsylvania 19015.

11. The Defendant is the United States of America, which is the only proper defendant in a FTCA.

12. The Federal District Court has jurisdiction over this cause because this action is brought pursuant to and in compliance with 28 U.S.C. §§1346(b), 2671-2680 et seq., commonly known as and referred to as the "Federal Tort Claims Act" ("FTCA") which vests exclusive subject matter jurisdiction of FTCA litigation in the Federal District Court.

**III.     SERVICE OF PROCESS**

13. The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by electronically filing or serving a copy of the Summons and of the Complaint on William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, by certified mail, return receipt requested, at his office United States Attorney's Office, Eastern District of Pennsylvania, Ste. 1250, 615 Chestnut Street, Philadelphia, PA 19106, to the attention of the Civil Process Clerk, and by serving a copy of the Summons and Complaint on William P. Barr, Attorney General of the United States, by certified mail, return receipt requested, at the Attorney General's Office, United States Department of Justice, 950 Pennsylvania Ave., NW, Washington D.C., 20530-0001, to the attention of the Civil Process Clerk.

**IV.     LIABILITY OF THE UNITED STATES OF AMERICA**

14. This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§2671-2680, commonly referred to as the "Federal Tort Claims Act" ("FTCA"). Liability of the United States is predicated specifically on Title 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages of which complaint is made, were proximately caused by the negligence, wrongful acts and/or omissions of employees and/or servants and/or agents of the United States of America. The negligent acts and/or omissions occurred at the Robert J. Dole VAMC which is, upon information and belief, is a facility owned and operated by the Defendant. Among the medical staff involved in the events at issue are Renae S. Schuler, M.D., Marie H. Hand, M.D. and Alaeldin B. Mohammed, M.D., William F. Goodman, M.D, Syed Raffi, M.D., Sachin Srinivasan, M.D., Stephen Bai, M.D., Lyth F. Al Attar, M.D., Nathan Tofteland, M.D., Dr. Goodman, nutritionist Paulette Thompson, David Burke, M.D., Dr. Miller, and Dr. Mahendran, who, upon information

and belief, are deemed to be federal employees of the U.S. Veterans Administration and thus, are agents of the Defendant.

15. The United States of America, the Defendant herein, through it agency, the U.S. Veterans Administration , owned, operated and controlled the Robert J. Dole VAMC, and staffed said health care facility with its agents, servants, and/or employees, including, but not limited to, Renae S. Schuler, M.D., Marie H. Hand, M.D. and Alaeldin B. Mohammed, M.D., William F. Goodman, M.D, Syed Raffi, M.D., Sachin Srinivasan, M.D., Stephen Bai, M.D., Lyth F. Al Attar, M.D., Nathan Tofteland, M.D., Dr. Goodman, nutritionist Paulette Thompson, David Burke, M.D., Dr. Miller, and Dr. Mahendran.

## V.     EMPLOYMENT:  COURSE AND SCOPE

16. Pursuant to 28 U.S.C. §§ 1346(b)(1), 2675, 2672 and 2679, the FTCA authorizes recovery for personal injury, death or property damage caused by negligent government employees acting within the scope for their federal employment. At all times material hereto, all persons involved in the medical and health care services provided to Plaintiff at the Robert J. Dole VAMC, were agents, servants, ostensible and apparent agents, and/or employees of the United States of America, the Defendant herein, and were at all times material hereto, acting within the course and scope of such employment. The Defendant is therefore vicariously responsible for such agents, servants, ostensible and apparent agents, and/or employees under the theories of *respondeat superior*, agency-by-estoppel and/or agency-in-fact. Pursuant to 28 U.S.C. § 2679, the FTCA is the exclusive money damages remedy for negligent actor or omissions of federal government employees acting with the scope of their federal employment.

## VI. THE CAUSE OF ACTION AGAINST THE UNITED STATES OF AMERICA

17. On July 1, 2017, the then 33-year-old U.S. Navy veteran Plaintiff presented to the ER at Robert J. Dole VAMC complaining of nausea and vomiting reporting weight loss of 100 lbs. in 23 days. He has been seen in the ER at an outside institution and was prescribed Zofran. Plaintiff was given 2 liters of IV fluids. A CT of the abdomen showed an anterior esophageal tumor with mass effect upon the distal esophagus. The plan was to perform a biopsy of the tumor, which was to be done the following Monday on July 3, so Plaintiff signed out AMA as his grandmother had died 3 days prior, and he wanted to attend her funeral.

18. On July 3, 2017, Plaintiff re-presented to the ER at Robert J. Dole VAMC and was admitted for severe nausea and vomiting and abdominal pressure and the inability to eat and drink. Plaintiff presented a past medical history of celiac disease and chronic pancreatitis. He presented to the ER with complaints of nausea and vomiting and the inability to eat and drink. Plaintiff reported that he had not eaten anything for the past 23 days and has survived on gummy vitamins and ice chips. He reported that anytime he eats solid foods, he feels like the food sits in his distal esophagus and immediately causes pain and discomfort, followed by severe nausea and vomiting. Liquids go down but result in GI upset, with nausea and vomiting shortly after. He reported that symptoms had worsened over the past 9 days. He reported that he lost 140 lbs. since March. He also reported severe diarrhea earlier for the first 2 weeks but has not had a BM in the past 9 days. He also reported going 5 days without urinating until today. He was in the ED 2 days prior with the same complaints. The CT of the abdomen showed a 5.2 x 3.3 cm anterior esophagus mass resulting in mass effect upon the distal esophagus. He left AMA. Labs were done which showed K+ 3.2, HCO3 19, Cr 0.98, BUN 10, Hb 15, TSH 0.84. He was started on IV fluids with 20meg KCl. He was febrile and VS were stable. The impression was dysphagia, and the plan was to

provide IV fluids, anti-nausea/anti-emetic medications and mechanically soft diet. For the esophageal mass, the plan for a GI consult and possible IR biopsy. He was seen by Dr. Hand and Dr. Goodman on the day of admission.

        19.        On July 4, the nausea and vomiting continued, and weakness in all four extremities was noted. His pulse was low in the 40's and later went up to 57. He was placed on telemetry. He was noted to have bloody urine and was continued on IV normal saline. On July 5, the endoscopic biopsy of the mass was performed. The operative note by Dr. Nathan Toftland documents a large lesion consistent with duplication cyst distal esophagus 59.9 mm x 25.5 mm. Gastritis was noted, and biopsies for H. pylori were obtained. He was to be evaluated for gastropersis. In a note authored by Dr. Lyth F. Al Attar, and co-signed by Dr. Toftland, prolonged nausea and vomiting for 26 days and 100 lbs. weight loss in 25 days are noted. He was continued on IV normal saline. On July 6, Plaintiff continues not to eat but has taken some water. He continues with upper and lower extremity weakness. IV normal saline continues. The plan was to keep NPO for a gastric emptying test, but Plaintiff did not want the test without a GI cocktail. He reported his last BM approximately 25 days ago. On July 7, Plaintiff was evaluated by nutritionist Paulette Thompson who documents that he is 6 foot and 272 lbs. and reported that he was 420 lbs. in March. UDS was positive for marijuana which Plaintiff reported he received as a prescription but had not used in over 30 days. The Plaintiff was discharged on July 7 to be followed by his PCP. The principal diagnosis upon discharge was duplication cyst, distal esophagus, dysphagia, nausea/vomiting – marijuana use vs. gastritis vs. duplication cyst, hypokalemia and non-anion gap metabolic acidosis. The discharge summary is dictated by Dr. Sachin Srinivasan who identifies Dr. Syed Raffi as the attending.

20. Significantly, given the history of 100 lbs. weight loss and no intake for 23 days, a full nutritional evaluation should have been performed during the July 3 admission. Further, he was not supported nutritionally during this admission. They should have ordered multivitamins ("MVI") to be added to the IV normal saline which they did not. They also failed to perform blood work to determine is nutritional status, including thiamine (B-1), and he should have been provided with nutrients, vitamins, minerals and calories needed to sustain life. A differential diagnosis of malnutrition should have been made and Plaintiff should have been treated accordingly.

21. On July 11, 2017, Plaintiff scheduled his CT surgery to remove the duplication cyst which was to be performed on July 17. Plaintiff re-presents to the ER at Robert J. Dole VAMC on July 12, 2017 with a complaint that he has not eaten or had a BM for 5 days. He reported that he had been discharged from the hospital 5 days earlier. His temperature was 101 degrees and he reported feeling weak. Again, he reported a 100 lbs. loss in a month. He was seen and evaluated by Dr. Miller who recommended an NG tube but Plaintiff refused. Notwithstanding his history of severe weight loss and the inability to eat and drink, a full nutritional evaluation was not ordered or recommended. MVI was not added to the IV fluids. During this ER presentation, he was not being supported nutritionally, nor was he provided with nutrients, vitamins, minerals and calories needed to sustain life until he duplication cyst could be removed on the 17th. He was discharged home from the ER on July 13 at 1:30 a.m.

22. On July 17, the CT surgical removal of the cyst, that was to be performed at Robert J. Dole VAMC that day, is aborted. In the operative note by Dr. David Berke, Plaintiff was noted to need resuscitation due to dehydration and he is referred to the ER. Plaintiff re-presents to the ER at Robert J. Dole VAMC, now for the fourth (4th) time since July 1, complaining of nausea/vomiting, nystagmus, dizziness and difficulty walking. He reports vomiting 20 times a day,

not for 2 days now. His weight is noted to be 249.7 lbs., and he reports a 23 lbs. weight loss in 10 days. He is lightheaded and weak and reports vertigo. He reports ringing in his right ear. The prior studies reflecting a duplicating cyst are noted. It was further noted that he had been managed with IV fluids and Zofran throughout the prior admission. In the ER, he is given one-liter normal saline bolus times 2 without adding MVI. The diagnosis is hypokalemia and lower extremity weakness, and he is admitted to the hospital.

23. The admission note is written by Dr. Mahendran who documents nausea and vomiting, voids daily or every other day, with stool every 3 to 4 days. He was sent to the ER for fluids. The reported weight loss is documented. He is noted to have dry mucous membranes. On physical exam, his abdomen is noted to be soft mildly tender with hyperactive BS. The impression is intractable nausea and vomiting, and the plan was to give IV normal saline, Zofran as needed, non-VA EGD evaluation ordered as per surgery, stomach emptying and upper GI tomorrow. Again, MVI is not recommended or ordered, nor is a nutritional evaluation instituted.

24. On July 18, Plaintiff continued to complain of lower extremity weakness. He is refusing meals. He requested a left eye patch as he reported getting dizzy through that eye which was been reported to Dr. Mahendran the evening before. He complained that he could not control his left eye which is affecting balance and ability to walk. They continued to administer IV normal saline at 150 cc/hr. without adding MVI. There is a note by attending Dr. Alaeldin Mohammed which documents nausea and vomiting and dysplasia, as well as vertigo for the past 1-2 days which he thought may be contributing. Dr. Mohammed noted the EGD showing a questionable duplicating cyst, and he ordered Meclizine which is used to treat nausea/vomiting associated with motion sickness. The Plaintiff was evaluated by nutritionist Paulette Thompson who documents poor PO intake since last admission. She notes urine protein elevated, and diet per doctor's orders.

25. During this three (3) day admission, Plaintiff continues to complain of dizziness, and is again treated with only IV fluids and anti-nausea/vomiting medication. He is seen and evaluated by ENT and Neurology. Even though he presents with nystagmus, electrolyte imbalance, extreme weight loss, nausea/vomiting and ataxia, not one physician involved in his care orders that thiamine levels be drawn, nor was MVI ever added to the IV fluids. Full nutritional evaluation was not ordered or recommended. Further, he was not being supported nutritionally, nor was he provided with nutrients, vitamins, minerals and calories needed to sustain life. Plaintiff was discharged on July 20 to follow with audiology for his dizziness and tinnitus. Classically, Wernicke's Encephalopathy is characterized by the tirad: ophthalmoplegia, ataxia and confusion. Plaintiff had the classic symptoms of Wernicke's Encephalopathy secondary to thiamine (B-1) deficiency. During this final admission, the medical personnel, including the ENT consult, utterly failed to recognize the signs and symptoms of Wernicke's Encephalopathy, and he was discharged without the appropriate diagnosis or treatment.

26. On July 28. 2017, he was taken to the ER of Via Christi Hospital St. Francis in Wichita after he was found on the floor of his apartment by his wife. She reported that the day prior, he was tired but coherent and was able to move, and that he was communicating via text today. She reported that he lost 100 lbs. since June due to intractable nausea/vomiting, and that his vomit had been bloody and his urine dark red in color. She also reported that his hearing has significantly decreased in the last month. She also advised that he had been to the VA several times with these issues. In the ER, Plaintiff was noted to be obtunded, and only able to communicate with short sentences and slurred speech, but then falls asleep without constant verbal and physical stimulation. He was noted to be disoriented and unable to communicate effectively. He was admitted to the hospital, and an MRI of the brain on July 29 was suggestive of Wernicke's which

was confirmed by the neurology consultation. The admission was complicated by acute respiratory failure and acute kidney failure which required dialysis for one month. Initially, he was unable to tolerate PO intake and needed to be fed via a PEG tube, but eventually progressed to a point that he was able to take PO diet with dysphagia and liquid modification. He had significant hypercalcemia. He was ultimately discharged the Robert J. Cole VAMC on September 14, 2017 for rehabilitation management and care. The final discharge diagnosis included Wernicke-Korsakoff Syndrome.

27. When the Plaintiff re-presented to the ER at Robert J. Cole VAMC on July 3, 2017, he presents with low potassium, and bradycardia as well as other signs and symptoms of dehydration and malnutrition. Ordering a plain IV represents a departure from the standard of care. Plaintiff needed a full nutritional evaluation (the dietitian's consult was completely worthless as she recommends frequent small meals of food he likes) given the history of 100lbs weight loss and no PO intake for 23 days. Malnutrition should have been included as a differential diagnosis, and Plaintiff should have been treated for same. They needed to have a plan to support him nutritionally until they could remove the cyst that appeared to be causing the nausea and vomiting. And a plan of normal saline, some potassium and a visit to the ENT after discharge with the hope that he would have surgery in about a month was inadequate and represents a departure from the standard of care. The physicians should have done blood work to determine his nutritional status, and they should have been providing the nutrients, vitamins, minerals and calories needed to sustain life. This failure represents a departure from the standard of care during the first admission and carried into the second admission of July 17. That there was a complete failure to evaluate and support the nutritional needs of Plaintiff who presented with a duplicating esophageal cyst that

was causing intractable nausea and vomiting; and that this failure resulted in malnutrition, thiamine deficiency and Wernicke's/Korsakoff Syndrome.

## VII. DAMAGES

28. By reason of the foregoing, the Plaintiff sustained severe and serious personal injuries, including brain damage, and was caused to suffer severe physical pain and mental anguish as a result thereof, and upon information and belief, some of these injuries are of permanent and lasting nature, including: Wernicke's/Korsakoff Syndrome; need for extensive in-house hospitalization and rehabilitation; conscious pain and suffering; emotional distress; impaired ambulation; needs assistance to stand; cannot walk unassisted; needs to use a wheelchair; entire body shakes; limited range of motion; can only lift arms to shoulder height; poor finger agility, left more impaired than the right; his left hand shakes; diminished hand grip, worse on the left; severely impaired fine motor skills; dysarthric scanning speech in which he speaks very slowly with soft poor articulation; difficult to express himself verbally; difficult to understand verbally; nystagmus; his eyes "bounce"; vision best when he looks up; blurry vision when he looks straight ahead; problems with gastric emptying; gastroparesis; stomach does not empty completely; bowel and bladder urgency problems necessitating that he wear Depends daily; does not timely recognize when he must urinate or have a bowel problem; third stage kidney deterioration; need to be followed by urologist, nephrologist, gastroenterologist, neurologist and neuro-ophthalmologist; memory deficit; long term and short term memory deficits; lost a decade or so of memory; difficulty absorbing new information; new learning is episodic; has good and bad days; learning is not proficient; significant cognitive decline from pre-injury baseline; unhappiness about condition; depressed about condition; anxiety; irritability; unable to be employed; economic loss due to inability to be employed; complete loss of future earning potential; loss of earnings; loss of

health insurance; loss of retirement benefits; future medical care costs, including physician services, other professional services, orthopedic and adaptive equipment, mobility/transportation, support care and personal items; remains completely dependent; needs to continue under the medical monitoring of his multidisciplinary team, including monitoring by neurology, neuro-ophthalmology, nephrology and gastroenterology; he required full time support care 24 hours, 7 days per week such as 24 hour home health aide; and requires housekeeping services.

## VIII. MEANING OF "DEFENDANT"

29. In this complaint, whenever the term "Defendant" is used, it means Defendant, Defendant's officers, agents, servants, employees, and/or representatives. Whenever in this complaint it is alleged that Defendants did any act or thing, it is meant that Defendant, Defendant's officers, agents, servants, employees and/or representatives did such act or thing, and that at the time of such act or thing was done, it was done with the full authorization and ratification of Defendant and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees and/or representatives. Whenever in this complaint it is alleged that Defendant omitted any act or thing, it is meant that Defendant, Defendant's officers, agents, servants, employees, and/or representatives omitted such act or thing.

## IX. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiff request that the Defendant be cited in terms of law to appear and answer herein: that upon final trial and hearing hereof, the Plaintiff have judgment against the Defendant in the amount of $13,054,972, for the amount of actual damages; and for such other and different amounts as they shall show proper amendment before trial; for post judgment interest as the applicable legal rate; for all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special,

to which the Plaintiff may show themselves entitled and to which the Court believes them deserving.

                                                      Respectfully Submitted,

                                                     SACCHETTA & BALDINO

Date:  October 28, 2020                  By: _____
                                                    Gerald B. Baldino, Jr., Esquire
                                                    Attorney I.D. No. 55624
                                                    Sacchetta & Baldino
                                                    308 East Second Street
                                                    Media, PA 19063
                                                    610-891-9212 Phone
                                                    610-891-7190 Fax
                                                    jerry@sbattorney.com